# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JEFFREY P. YANZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 12-00699-CV-W-DGK |
| APPLEBEE'S INTERNATIONAL, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case arises from Plaintiff Jeffrey Yanz's ("Yanz") employment with Defendant Applebee's International, Inc. ("Applebee's"). Plaintiff asserts claims for age discrimination, retaliation, and a hostile work environment in violation of the Age Discrimination Employment Act of 1967 as Amended ("ADEA"). Currently before the Court are Defendant's motion for summary judgment (Docs. 38, 39), Plaintiff's opposition (Doc. 40), and Defendant's reply (Doc. 41). For the following reasons, Defendant's motion for summary judgment is GRANTED.

### Background

The following facts are undisputed. Plaintiff Jeffrey Yanz began his employment with Defendant Applebee's International, Inc. in September 1992, at the age of thirty-five.[1] While employed by Applebee's, Yanz held the positions of assistant manager, assistant general manager, and general manager. At the time Plaintiff resigned from Applebee's in November 2010, he was a general manager. As a general manager, Yanz was responsible for hiring, staffing, training, restaurant maintenance, and sanitation.

---

[1] Yanz was born on May 9, 1957.

Prior to 2010, Yanz reported to area director Frank Lewis. From February 2010 until his resignation, Yanz reported to area director Mohammad "Mo" Yeganeh ("Yeganeh"),[2] who is approximately six weeks older than Yanz.[3] During 2010, Yeganeh also supervised Kansas City area employees TJ Karabulut, Bruce Harris, Brandon Weishaar, Beth Gerberich, and Kendra Creswell.[4]

**I.  Applebee's General Policies**

During Yanz's employment, Applebee's maintained a Progressive Discipline Guide that included the following suggested disciplinary steps: coaching and counseling, oral warning, written warning, suspension, and separation. Applebee's Progressive Discipline Guide states that "[t]hese guidelines are just that—guidelines—and should not be considered a promise or agreement to handle an infraction to the rules in any certain way." Prior to February 2010, when Yeganeh became Yanz's Area Director, Yanz's only discipline was receipt of a written warning in 2007.

During Yanz's employment, Applebee's also had the following Anti-Discrimination and Anti-Harassment Policies and Procedures:

> It is Applebee's policy not to discriminate in any term or condition of employment on the basis of race, color, religion, age, national origin, ancestry, sex (which includes sexual harassment, sexual orientation, gender, disability, handicap, pregnancy, veteran status or military status, or any other status protected by law).
>
> As part of our policy of non-discrimination, Applebee's prohibits any unwelcome harassment which would be any verbal or physical conduct by a manager, supervisor, co-worker, customer, vendor, or supplier that disparages, threatens, intimidates, coerces, or shows hostility or dislike toward an Team Member because of his or her race, color, religion, age, national origin, ancestry, sex (which includes sexual harassment, sexual orientation, gender, disability,

---

[2] The Court notes that Plaintiff refers to Yeganeh throughout his brief as "Defendant Yeganeh." However, Yeganeh is not and has never been a defendant in this lawsuit.
[3] Yeganeh was born on March 27, 1957.
[4] Defendant also maintains that Yeganeh supervised Rich Sanders, Anthony Hochnuik, and Jack Swanigan during a portion of 2010.

2

> handicap, pregnancy, veteran status or military status, or another other status protected by law), and that:
>
> 1) has the purpose or effect of creating an intimidating, hostile, abusive or offensive working environment or of unreasonably interfering with an individual's work performance; or
>
> 2) otherwise adversely effects an individual's work performance.

Applebee's includes the same prohibition against discrimination in its Associate Handbook.

During his employment, Yanz understood that he could report a violation of any portion of Applebee's policies and procedures, including being discriminated against or harassed, to a supervisor, corporate office, the compliance department, or the legal department. He also understood that he could call Applebee's ResolveIt Hotline to report a violation.

**II.  February 2010 through May 7, 2010: Yanz's First Three Months Under Yeganeh's Supervision**

During February 2010, the Applebee's restaurant Yanz managed began a revitalization process, in part, to improve the guest experience and promote sales. To oversee this process, Yeganeh was present in Yanz's restaurant nearly every day for a period of time. On February 8, 2010, Yanz had his first one-on-one meeting with Yeganeh to discuss Yeganeh's goals and expectations related to staff assessment, financial results, guest satisfaction, and operations.

On February 27, 2010, Yanz and Yeganeh had another one-on-one meeting in which Yeganeh discussed the importance of community awareness. Specifically, Yeganeh stressed how important it was for Yanz to be aware of the statewide dance competition taking place across the street from the restaurant which would create additional traffic, affect staffing, and impact product ordering. Yanz was not aware that the event was taking place. Yeganeh further informed Yanz that he was concerned about Yanz's failure to set clear expectations and enforce uniform standards of

cleanliness and organization.

On March 12, 2010, Yanz and Yeganeh discussed critical areas of improvement for Yanz to focus on in the immediate future. During the discussion, Yeganeh advised Yanz that he was confident that Yanz could make immediate and ongoing progress in all areas. Yanz agreed that it was important to make improvements in the noted areas.

On March 24, 2010, Yanz and Yeganeh had another one-on-one meeting. During that meeting, Yeganeh gave Yanz both positive and negative feedback. Yeganeh told Yanz he "did a great job on food and bar cost," but that "[l]abor usage consistently exceeds budget with significant waste variance." Yeganeh also informed Yanz that he should "[a]nalyze and identify gaps in operational execution and shift leadership and act swiftly and decisively to address them through training, coaching and counseling." Finally, Yeganeh noted that after five weeks of working with Yanz, he still had the same poor performers working in his restaurant.

On April 21, 2010, Yeganeh had another one-on-one meeting with Yanz. For this meeting, Yeganeh prepared a Coaching and Counseling Log which noted that, despite ongoing feedback, Yanz had not met performance standards. The log further noted areas in which Yanz needed improvement and stated that Yanz must hold himself and his team accountable moving forward.

On April 28, 2010, Yeganeh sent Yanz an email informing him that guests had submitted guest service reports/complaints ("GSRs") for his restaurant and that it is "disappointing to see GSRs after the huge investments we have made in re-training of your staff." Yeganeh's email further informed Yanz that it was incumbent upon him and his managers to take appropriate measures to ensure every guest's happiness. Yeganeh noted that Applebee's could have avoided the guest complaints if a manager had been observing behaviors, correcting employee behavior, or at a

4

minimum conducting effective table visits.

On April 30, 2010, Yeganeh issued Yanz another Coaching and Counsel Log, reiterating the same information contained in the April 21, 2010 log.

On May 7, 2010, Yeganeh sent an email to Yanz's restaurant setting forth expectations related to table visits, net promoter scores, and guest service reports. Yanz disagreed with Yeganeh's expectations with respect to table visits and net promoter scores, but he did not contact Yeganeh with any questions related to these expectations.

### III.   May 22, 2010 through June 2010: Yanz's Oral Warning

On May 22, 2010, Yanz and Yeganeh had a one-on-one meeting during which Yeganeh presented Yanz with typewritten notes informing him that over the last three months he had observed Yanz's lack of initiative and urgency in managing poor performers and taking immediate actions to improve guest satisfaction and proper staff training. Yeganeh admits that he cannot remember typing notes to present at one-on-one meetings with any other general managers.

On May 27, 2010, Yanz received and signed an Oral Warning of Violation ("the Oral Warning") documenting the areas of deficiency discussed during the May 22, 2010 meeting and requiring corrective action within thirty to sixty days.[5] The Oral Warning contained a statement noting that the consequences of future violations included "further disciplinary action up to and including termination." While Yanz agrees that the expectations in the Oral Warning were reasonable, if the same for everyone, he believes Yaganeh's request to improve within thirty to sixty days was not reasonable.[6] Yanz believes that Yeganeh issued him the Oral Warning to push him out of Applebee's because of his age. Yanz bases this belief on the way Yeganeh "treated [him] from

---

[5] Yanz received and signed the Oral Warning on May 27, 2010, but the violation date was May 25, 2010.

the first day he came in the restaurant," because rather than say "Hello. How are you doing?" Yeganeh told Yanz what was wrong with his restaurant. Yanz also claims Yeganeh "was not receptive" to his ideas and did not give Yanz his full attention. Yanz did not meet all of the action items set forth in the Oral Warning in the sixty-day time period.

On June 23, 2010, Yeganeh sent an email to Yanz and his team thanking them for their efforts in conducting a tour for franchise owners to observe a revitalized restaurant and telling them they "did a fantastic job." However, a day later, Yeganeh sent an email to Yanz and his team that stated: "Why is your NPS[7] in a freefall down now @37? What are you doing to fix it and get to 60? Can not be Below 60." Yanz believes the email was unfair because, according to him, its wording made it sound like a "beat down."

### IV. July 6, 2010: Yanz's Written Warning

On July 6, 2010, Yeganeh issued Yanz a Written Warning of Violation ("the Written Warning") for failure to perform his job duties successfully. The Written Warning stated:

> **Explanation of Violation** Jeff, as we have discussed ongoing your performance has been far below standards for your position as a GM. Over the next 30 days you must take the following actions and achieve these minimum results: 1. Achieve and maintain a minimum of 60% NPS. 2. Manage GSRs < 1 per 10,000 guests 3. Management weekly financial results such as labor, bar cost, and food cost at or below budget and labor waste under 15% in BOH and <7% in FOH. **Action to Resolve** You must take the initative to execute and validate the following: 1. Evaluate your staff on a weekly basis, act with urgency and decisiveness to manage poor performers 2. Select, hire and effectively train staff to ensure 100% staffing on all shifts. 3. Establish specific goals by departemnt with each manager conduct weekly managers meeting and conduct/document individual manager's 1/1 and provide effective development, coaching and

---

[6] Despite receipt of the Oral Warning, Plaintiff's overall score on his May performance scorecard was equal to or higher than twenty-three other general managers in the Kansas City/Midwest region.
[7] NPS appears to stand for Net Promoter Score, which is a score based on ratings from completed guest surveys.

counseling to improve performance. 4. Teach, develop, and follow up to validate execution of all operating systems: i.e. Daily/weekly cleanliness, recipe reviews, checklists, Shift communication board for BOH/FOH team members, check in process, recipe reviews, BOH/FOH and Bar trees etc. on every shift. 5. Ensure the entire facility / physical plant is maintained and all tools such as: Headets, termal couple, headsets, soundogs, etc. are used by staff.

The Written Warning provided Yanz thirty days to resolve the violations. Yanz believes that some, but not all, of the requests could have been accomplished in the thirty-day time frame. The Written Warning also contained a statement noting that the consequences of future violations included "further disciplinary action up to and including termination." Yanz did not meet all the goals set forth in the Written Warning, but Applebee's took no disciplinary action as a result of this failure; Yanz did not receive a change in pay, title, or shift as a result of the July 6, 2010 Written Warning or his failure to meet the expectations set forth in it.

### V. July 23, 2010: Yanz's Meeting with Human Resources Manager Courtney Martinez

On July 23, 2010, Yanz met with Kansas City Region Human Resources ("HR") Manager Courtney Martinez ("Martinez") to discuss his oral and written warnings, his belief that Yeganeh was treating him differently than other general managers, and his question about mileage reimbursement. Yanz's notes from the meeting state, in part, "Here is my complaint. I feel that I am being treated differently than other general managers in the region within similar results because of my age. If not my age then why am I being held to a different standard?"[8]

Martinez contends she spoke with Yeganeh after receiving Yanz's complaint, but there is no documentation supporting this contention. Martinez does not remember whether she mentioned

---

[8] Now, Yanz also claims that Yeganeh was making an age-biased comment when he told Yanz to "[t]ake the ownership and initiative in evaluating your business and people continuously with the utmost degree of energy and

7

anything specific to Yeganeh about Yanz's concerns. Yeganeh testified that Martinez had a conversation with him about Yanz being mad at him. Although Yanz complained that he was discriminated against by Yeganeh because he was written up more than his peers, Martinez never checked to see who Yeganeh disciplined in 2010. Additionally, she did not review any of Yanz's disciplinary history. Martinez checked in with Yanz three days after the complaint, but Yanz never received any formal information regarding the resolution of his complaint.

After the July 23, 2010 meeting, Yanz believed that Martinez was not investigating his claims regarding age discrimination. However, Yanz never elevated these concerns to anyone else because he believed it was futile; Yanz testified that he thought Martinez investigated all the claims in the Kansas City region and any further claims would revert back to her. Additionally, he stated that "it was crystal-clear to me where this was going; that I was being treated differently; that comments from about energy, speed to me are youthful comments; that the next step for me was termination."

**VI. July 23, 2010 through October 2010: Yanz's Performance After the Written Warning**

From the date of his July 6, 2010 Written Warning through the end of his employment with Applebee's, Yanz met his 60% NPS goal every month. On July 23, 2010, Yeganeh sent an email to Yanz's restaurant praising Yanz and his team for "[g]reat progress in NPS."

On September 2, 2010, Yanz and Yeganeh had their first one-one-one meeting since July, during which Yeganeh told Yanz that he was making "great progress in NPS," "[g]ood progress in AOA," and that his team members were "pumped up and engaged." During this meeting, Yanz and

---

urgency" because "at a certain age or people of a certain age that you may be prejudiced against don't have energy." However, Yanz did not tell Martinez or anyone else at Applebee's that he thought Yeganeh used age-biased phrases.

Yeganeh did not discuss any of the goals from the July 6, 2010 Written Warning. On September 5, 2010, Yeganeh sent Yanz and his team an email providing positive feedback for making good progress in managing labor waste and for doing a great job in NPS. On September 10, 2010, Yeganeh sent an email to Yanz and his team thanking them for their "CONTINUED great results in NPS and great progress in labor."

On September 29, 2010, Yanz received his mid-year review from Yeganeh. Yeganeh rated Yanz lower than Yanz rated himself in only one of the rating areas, "self-management." Yanz rated himself as "successful plus" in this category and Yeganeh rated him "successful." In the comments section, Yeganeh stated: "Jeff, your willingness to realize and adopt to the changes that are dictated by the business and your ability to recognize your own strengths and leverage those strengths to develop your opportunities along with your willingness to continually seek and incorporate feedback will help fuel your personal and professional growth and will help you fully achieve all the great potential in you."

On October 1, 2010, Yeganeh sent an email to his district praising Yanz's restaurant for consecutive months with 70% NPS and thanking everybody in the district for their outstanding efforts during the month. On October 4, 2010, Yeganeh sent an email to Yanz and his team praising them for their October NPS and stating that he was "confident that you have the endurance and will have another record month in Guest Satisfaction." On October 18, 2010, Yanz and Yeganeh had a one-on-one, during which Yeganeh told Yanz that things were going well. Yeganeh made no reference to the July 6, 2010 Written Warning.

### VII. Yanz's Overall General Manager Performance Evaluation Ratings

Applebee's general managers receive a mid-year and end-of-year formal performance

evaluation. General managers can receive a monthly score of: outstanding (O), successful plus (S+), successful (S), successful minus (S-), needs improvement (NI), or unsuccessful (U) in the following categories: (1) sales, (2) controllable profit, (3) net promoter score, which is based on ratings from completed guest surveys, and (4) an overall score based on the combined totals of these three categories.

During the last seven months he was supervised by area director Frank Lewis, Yanz received the following overall performance scores: July 2009 (S-), August 2009 (NI), September 2009 (U), October 2009 (NI), November 2009 (S-), December 2009 (S-), and January 2010 (U). During the time period Yeganeh supervised him, Yanz received the following overall performance scores: February 2010 (NI), March 2010 (S-), April 2010 (NI), May 2010 (S), June 2010 (NI), July 2010 (S-), August 2010 (S-), September 2010 (NI), October 2010 (S).

**VIII.   November 2010: Yanz's Resignation**

Yanz submitted his resignation letter to Yeganeh on November 5, 2010. When Yanz told Yeganeh he was giving his two weeks' notice, Yeganeh acted concerned, saying things like "Oh, I'm sorry to hear that. Can I help" and "Can I change your mind?" Yanz maintains that Yeganeh was insincere in making these statements. Between November 5, 2010 and November, 18, 2010, Yanz's last day of work at Applebee's, Yeganeh told Yanz "I really wish you'd change your mind. Wish you'd stay." Yanz maintains that Yeganeh was insincere in making this statement.

Yanz was offered a position with Cheddar's prior to resigning from Applebee's. He began working for Cheddar's approximately one week to ten days after November 18, 2010. Yanz now maintains that he quit because "in any relationship, if there's a lack of trust, I don't think that it's

10

worth salvaging and moving on. You—there's no trust. It's not going to work." Applebee's replaced Yanz with Shane Robertson, who was under forty at the time he took over Yanz's position.

**IX.     December 2010: Yanz's Discrimination Complaint**

On December 20, 2010, Yanz met with United States Equal Employment Opportunity Commission ("EEOC") Investigator Faye Watts to conduct an intake interview regarding Yanz's charge of discrimination against Applebee's. In the intake interview, Yanz stated that he made a complaint of age discrimination to Martinez in Applebee's HR department, that he did not receive any further communication from HR after his complaint, and that Yeganeh did not return to Yanz's store for three weeks after Yanz's meeting with Martinez. Yanz also told the EEOC that Yeganeh provided him with no performance feedback in the weeks following his Written Warning, even though Applebee's policies require supervisors to give consistent feedback on employee progress. On December 25, 2010, Yanz filed a charge of age discrimination against Applebee's with the Missouri Commission on Human Rights, cross-filed with the EEOC.

**X.     Other**

The only other general managers that Martinez is aware of being written up by Yeganeh were Anthony Hochniuk (age fifty-four at the time of the write-up) and Jack Swanigan (age fifty at the time of the write-up). These individuals were written up one day before Yeganeh issued Yanz his Oral Warning. While these individuals did not receive warnings identical to Yanz, each warning alleged the same general violation of "failure to perform job duties successfully" and allowed for thirty days to correct the violation. In August 2010, Anthony Hochniuk's rating scores fell, and although outside the thirty days following his written warning, Applebee's terminated him. In September 2010, Jack Swanigan voluntarily terminated his employment with Applebee's.

11

Applebee's replaced Swanigan with Steve Swift, who was under the age of forty at the time. Yeganeh also testified that he wrote up TJ Karabulut, who was forty-eight at the time of his write-up.

Applebee's former employee, Bruce Harris, who was also a general manager in 2010, submitted an affidavit attesting that after the Kansas City region began its period of revitalization, the company began a systemic and company-wide practice of terminating or otherwise pushing out older general managers in the Kansas City region. Mr. Harris also attested that Yeganeh, who was his area director and immediate supervisor from 2007 to Spring 2010, treated younger general managers more favorably than older general managers.

**Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must evaluate the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving

party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

## Discussion

### I. Plaintiff cannot establish a prima facie case of age discrimination.

The ADEA makes it unlawful for an employer to terminate or otherwise discriminate against an employee with respect to his compensation, terms, conditions, or privileges of employment because of age. 29 U.S.C. §§ 623(a)(1); *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 141 (2000). To establish a prima facie case of age discrimination, a plaintiff must demonstrate (1) he is within a protected class, (2) he was qualified to perform his job, (3) he suffered an adverse employment action, and (4) nonmembers of his class, persons under forty, were not treated the same. *Breeding v. Gallagher*, 164 F.3d 1151, 1156 (8th Cir. 1999).

Plaintiff argues that he suffered an adverse employment action through constructive discharge. "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing [him] to quit." *Baker v. John Morrell & Co.,* 382 F.3d 816, 829 (8th Cir. 2004). To support a claim of constructive discharge, a plaintiff must establish (1) that a reasonable person in his situation would find the working conditions intolerable; and (2) that the employer either intended to force him to quit or could have reasonably foreseen that he would have quit as a result of its actions. *Wright v. Rolette Cnty.*, 417 F.3d 879, 886 (8th Cir. 2005).

### A. Plaintiff's working conditions were not sufficiently intolerable.

Plaintiff argues that the actions of Yeganeh and other upper-level Applebee's management

13

created intolerable working conditions. "The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings." *Tatom v. Ga. Pac. Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). To prevail on a constructive discharge claim, a plaintiff must show that his working conditions were "so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Id.* "[A] feeling of being unfairly criticized . . . [is] not so intolerable as to compel a reasonable person to resign." *Tork v. St. Luke's Hosp.*, 181 F.3d 918, 919 (8th Cir. 1999) (citations omitted) (internal quotation marks omitted). Rather, a plaintiff has "an obligation to act reasonably by not assuming the worst and by not jumping to conclusions too quickly." *Id.* (citing *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996)). "An employee who quits without giving [his] employer a reasonable chance to work out a problem is not constructively discharged." *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir. 1995).

Plaintiff claims the following actions caused intolerable working conditions which forced him to resign his employment with Applebee's: (1) Yeganeh issued Yanz a Coaching and Counsel Log on April 21, 2010, and again on April 31, 2010, for allegedly failing to meet the expectations of his position; (2) Yeganeh issued Yanz an Oral Warning on May 27, 2010, giving him thirty to sixty days to resolve the issues identified; (3) Yeganeh issued Yanz a Written Warning on July 6, 2010, giving him thirty days to resolve the issues identified; (4) Yeganeh worded feedback, such as emails, in a way that was "a beat down;" (5) Yeganeh interacted differently with other, younger general managers than he did with Yanz, for example, making small talk with them and asking about their personal lives;[9] (6) Applebee's was engaging in a process of pushing out older employees during its period of revitalization.

---

[9] Yanz also alleges that Yeganeh failed to show that he cared about Yanz as an individual. While Yanz admits he

First, Plaintiff provides no evidence suggesting that the above criticisms or warnings lacked a legitimate business related basis. Second, the evidence shows that in addition to reprimanding Plaintiff for performance issues, Yeganeh praised him and his team with the following positive feedback: (1) Yeganeh told Yanz in a one-on-one meeting that he was doing a great job on food costs and a good job on bar costs; (2) Yeganeh sent e-mails to Yanz on multiple occasions praising Yanz and his restaurant; and (3) Yeganeh thanked Yanz and his team for doing a "fantastic job" and serving as an example of a revitalized restaurant. Furthermore, in the three months prior to his resignation, Plaintiff presents no evidence of any negative feedback or comments from Yeganeh or any other Applebee's management.

Plaintiff's argument also relies heavily on the affidavit of Bruce Harris stating that during Applebee's period of revitalization, he witnessed Applebee's begin a company-wide business practice of terminating or otherwise pushing out older general managers in the Kansas City region. Additionally, Plaintiff relies on performance allegations showing that for some months out of the year, he received higher scores than other younger general managers. However, this evidence does not come close to showing that Applebee's created an intolerable working environment.

In sum, all of these allegations taken together are insufficient to create a genuine issue of fact as to whether Plaintiff's working conditions were so objectionable that a reasonable person would have no other recourse than resignation. Although Plaintiff has provided some evidence that he was disciplined more frequently beginning when Yeganeh became his supervisor and that this may have been due to age bias, there is no evidence that Plaintiff's working conditions were objectively intolerable. That Plaintiff voluntarily resigned based on feelings of discrimination, is not sufficient,

---

"didn't always hear the total conversation" between Yeganeh and other general managers, Yanz stated, "you could

without more, to establish constructive discharge. Rather, Yanz's situation here is much like that in *Tork*, where the Eighth Circuit held that an employee has "an obligation to act reasonably by not assuming the worst and by not jumping to conclusions too quickly,"

Because Plaintiff cannot establish constructive discharge, there is no adverse employment action, and he cannot prove his claim for prima facie age discrimination .[10]

## II. Plaintiff cannot establish a prima facie case for retaliation.

For a plaintiff to make out a claim for retaliation, he must show that he "participated in a protected activity," that the employer treated him "in a manner that was materially adverse," and "that there was a causal relationship between the two." *Betz v. Chertoff*, 578 F.3d 929, 937 (8th Cir. 2009). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

---

see he's focused on what they're saying. He's listening. He's smiling. . . . He's in the moment, he's present."
[10] A written warning or negative performance review does not by itself does not constitute an adverse employment action, unless the employer uses that "to alter the terms or conditions of employment to the detriment of the employee." *See Baucom v. Holiday Cos.*, 428 F.3d 764, 768 (8th Cir. 2005) (citing *Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003)). Because Applebee's took no action based on Yanz's Written Warning, there is no adverse employment action.

There is no question that Plaintiff engaged in protected activity by complaining to HR Manager Courtney Martinez that he believed Yeganeh treated him differently because of his age. *See Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011) (finding that a filing of an internal complaint qualifies as protected conduct). The question is whether there was an adverse, tangible employment action that resulted from this complaint. "[T]here are no bright-line rules with respect to what constitutes an adverse employment action for purposes of a retaliation claim, and therefore courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir. 1997)) (citations omitted).

In his complaint, Plaintiff contends that in retaliation for his complaint of discrimination, Martinez failed to investigate his complaint, causing a constructive discharge. However, Applebee's decision not to investigate Plaintiff's complaint does not constitute an adverse employment action. "[I]n a run-of-the mine case such as this one, an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint." *Fincher*, 604 F.3d at 721. Furthermore, because the Court has found that Plaintiff has not presented evidence of constructive discharge, his retaliation claim cannot survive on this ground.

### III. Plaintiff cannot establish a prima facie case for a hostile work environment.

To establish a hostile work environment claim, a plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment based on his age; (3) the harassment affected a term, condition, or privilege of his employment; (4) his employer knew or should have known of the harassment; and (5) the employer failed to take proper action. *Peterson v. Scott Cnty.*,

406 F.3d 515, 523-24 (8th Cir. 2005) (citing *Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 881 (8th Cir. 2005)). To show that the harassment affects a term, condition, or privilege of employment, a plaintiff must offer facts that show the harassment to be "sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment as viewed objectively by a reasonable person." *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 809 (8th Cir. 2008) (quoting *Carpenter v. Con-Way Cent. Express, Inc.,* 481 F.3d 611, 618 (8th Cir. 2007)) (internal quotation marks omitted).

In evaluating a claim for hostile work environment, a court looks to the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance and whether the conduct unreasonably interfered with the employee's work performance." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518-19 (8th Cir. 2010) (quoting *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 893 (8th Cir. 2005)). To show a hostile work environment, "[m]ore than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) (quoting *Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 967 (8th Cir.1999)) (internal quotation marks omitted).

Plaintiff alleges that Yeganeh created a hostile work environment by failing to give Yanz his full attention, criticizing his job performance, not being receptive to his ideas, excluding Yanz from his inner circle, and favoring others' ideas over Yanz's. Plaintiff also alleges that Yeganeh made age-based comments, such as "[t]ake the ownership and initiative in evaluating your business and people continuously with the utmost degree of energy and urgency" that subjected him to a hostile work environment.

18

This evidence is insufficient to establish that the alleged harassment was so severe and pervasive to poison the work environment and be legally actionable. In *O'Brien v. Dep't of Agriculture*, for example, the Eighth Circuit held that even though the plaintiffs' supervisor "interfered with their work on a daily to weekly basis, embarrassed, isolated, and ostracized them; closely scrutinized and criticized their work; and increased their workload," the actions were not severe enough to be actionable. 532 F.3d at 809 (citing *Nitsche v. CEO of Osage Valley Elec. Coop.,* 446 F.3d 841, 846 (8th Cir. 2006) ("To be actionable, the conduct complained of must be *extreme in nature* and not merely rude or unpleasant.")). Similarly, in *Bradley v. Widnall*, the Eighth Circuit found that despite an employee's exclusion from the decision-making process, disrespectful treatment, subjection to false complaints, and curtailment of supervisory duties, the employer's conduct was not severe or pervasive. 232 F.3d 626 (8th Cir. 2000).

Accordingly, the Court finds that there is no genuine issue of material fact regarding whether Plaintiff was subjected to a hostile work environment.

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Court holds that Plaintiff has failed to establish a genuine issue of material fact as to his claims for prima facie age discrimination, retaliation, or a hostile work environment.

**IT IS SO ORDERED.**

Date: July 1, 2013          /s/ Greg Kays
                                                          GREG KAYS, JUDGE
                                                          UNITED STATES DISTRICT COURT